**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**ABILENE DIVISION**

| | | |
|---|---|---|
| **CHARLES M. WOOD,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 1:05-CV-0131-C |
| | § | ECF |
| | § | Referred to the U.S. Magistrate Judge |
| **JO ANNE B. BARNHART,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**

**THIS MATTER** is before the court upon Plaintiff's complaint filed July 8, 2005, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff filed a brief in support of his complaint on January 9, 2006, and Defendant filed her brief on February 6, 2006. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this matter to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge affirm the Commissioner's decision and dismiss the complaint with prejudice.

**I.   STATEMENT OF THE CASE**

Plaintiff filed an application for a period of disability and disability insurance benefits on January 30, 2003, alleging disability beginning April 1, 2001. Tr. 15. Plaintiff's application was denied initially and upon reconsideration. Tr. 56-59, 62-65. Plaintiff filed a Request for Hearing

by Administrative Law Judge on October 1, 2003, and this matter came for hearing before the Administrative Law Judge ("ALJ") on June 24, 2004.  Tr. 15, 24-46, 55.  Plaintiff, represented by an attorney, testified in his own behalf.  Tr. 27-42.  Carol Bennett, a vocational expert ("VE"), appeared and testified as well.  Tr. 42-45.  The ALJ issued a decision unfavorable to Plaintiff on July 16, 2004.  Tr. 12-22.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act.  Tr. 15.  He found that:  Plaintiff met the disability insured status requirements on April 1, 2001, through the date of his decision and Plaintiff had not engaged in substantial gainful activity at any time since April 1, 2001.[1]  Tr. 16, 20.  Plaintiff has "severe" impairments, including multiple sclerosis ("MS"); mood disorder secondary to MS, with depressive features; degenerative changes in his great left toe; and obesity.  Tr. 20.  Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1.  Tr. 20-21.  Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work or other work existing in the national economy.

The ALJ discussed Plaintiff's diagnosis of MS and his symptoms, such as fatigue, hypersomnia, an altered gait, and slurred speech, which manifested about a year before the formal diagnosis.  Tr. 16.  The ALJ noted Plaintiff's care under a neurologist, as well as the results of an MRI and an EEG, which confirmed the diagnosis.  *Id*.  The ALJ noted Plaintiff's sypmtomology included weakness, fatigue, sensory abnormalities, and difficulty speaking.  *Id*.  The ALJ noted Plaintiff's continued care for MS and for depression.  *Id*.

---

[1] The ALJ found that Plaintiff's part-time work through April 2002 did not constitute substantial gainful activity.

The ALJ noted Plaintiff's testimony of gradual deterioration due to his MS and a worsening of his symptoms. Tr. 16-17. He noted Plaintiff's report of difficulty with tasks requiring manual dexterity or grip strength and his reports of problems with balance and with sitting for extended periods. Tr. 17.

The ALJ noted that Plaintiff's neurologist indicated that Plaintiff's coordination, gait, and balance had deteriorated by February 27, 2002, although a March 2002 MRI indicated that the plaques in his brain had not progressed. *Id.* The ALJ noted Plaintiff's use of a cane, his reduced strength in the lower extremities, his speech problems, and his continued fatigue. *Id.* He also noted the findings of a consultative examiner, who noted that Plaintiff's strength was preserved, he did not have reproducible fatigue, and he was able to squat and grip at least 10 times repeatedly. *Id.* The ALJ also noted that he had considered the opinions of the state agency medical consultants, who opined that Plaintiff retained the RFC for a limited range of work at the sedentary exertional level. *Id.*

The ALJ indicated that Plaintiff had medically determinable impairments capable of producing the subjective complaints alleged. Tr. 16. The ALJ found, however, that Plaintiff's subjective complaints were exaggerated. Tr. 17.

The ALJ found that Plaintiff could not return to his past relevant work as a medical service technician. Tr. 19, 21. He noted that Plaintiff was considered a "younger" person with a high school education. Tr. 21-22; *see* 20 C.F.R. §§ 416.963, 416.964.

The ALJ found that Plaintiff retained the RFC to perform the exertional requirements of sedentary work activity, limited to jobs that do not require: more than occasional stooping or crouching; balancing, crawling, kneeling, or climbing scaffolds, ladders, and ropes; working at unguarded heights or near unguarded hazardous mechanical equipment; sitting without the opportunity to occasionally stand in addition to a lunch and the normal legal breaks during the work

day; walking more than one hundred yards at one time without the opportunity to sit; standing more than ten minutes at one time without the opportunity to sit; standing/walking for more than one hour out of an 8-hour work day; pushing, pulling, or performing extended reaching repetitiously with the upper extremities more than occasionally; handling or fingering objects more than frequently; and speaking more than incidentally with co-workers and supervisors. Tr. 19-21. Additionally, the ALJ found that Plaintiff is limited to jobs that do not require: maintaining fixed concentration and attention for periods of longer than 20 minutes without the opportunity to briefly refocus for a minute or two and come back to fixed concentration; working with more than mildly decreased ability to maintain pace; performing tasks at more than lower-end detailed instructions; and requiring more than superficial interaction with the public. Tr. 20-21. Having found that Plaintiff could not perform the full range of sedentary work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite his severe impairments. Tr. 20-22. The ALJ relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in the national economy, including the jobs of inspector, with 42,000 jobs nationally; and grader/sorter, with 30,000 jobs nationally. *Id*. The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 20-22.

Plaintiff submitted a Request for Review of Hearing Decision/Order on September 17, 2004. Tr. 10-11, 343. After granting a 25-day extension for the presentation of additional evidence, the Appeals Council issued its opinion on May 13, 2005, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision and denied Plaintiff's request. Tr. 4-9. The ALJ's decision, therefore, became the final decision of the Commissioner.

On July 8, 2005, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.  STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271;

*Newton*, 209 F.3d at 453.  In this case, the ALJ found at step 5 that Plaintiff was not disabled because he retained the ability to perform work in the national economy.  Tr. 20-22.

### III.   DISCUSSION

Plaintiff claims that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence because the ALJ failed to separately consider and reach a finding as to Plaintiff's ability to maintain employment for a significant period of time.

The ultimate issue is whether the ALJ's decision is supported by substantial evidence.  The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

Plaintiff argues that the ALJ erred in failing to determine whether he had the ability to maintain employment, pursuant to *Watson*, 288 F.3d at 218  and *Singletary v. Bowen*, 798 F. 2d 818, 822 (5th Cir. 1986).  In *Singletary,* the Fifth Circuit noted that "[a] finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time."  *Singletary,* 798 F.2d at 822.  The requirement for a finding of the ability to maintain employment is not restricted to instances where non-exertional impairments are present.  *See Watson*, 288 F. 3d at 217-18.

In *Watson*, the claimant had degenerative disk disease, which caused the loss of movement in his legs every few weeks and too much pain to work every few weeks. *Id.* at 218.  In *Wingo*, the ALJ found that Plaintiff retained the residual functional capacity to perform the full range of work at the sedentary level and applied the Medical-Vocational Guidelines to direct a finding of "not disabled."  *Wingo v. Bowen*, 852 F.2d 827, 829 (5th Cir. 1998).  The ALJ in *Wingo* did not consider

medical evidence about several of the claimant's impairments, as well as evidence that she was often unable to leave her bed for days at a time. *Id*.

Plaintiff indicated in an Activities of Daily Living Questionnaire that on occasional days he may feel that he did not have the strength/energy and his condition did affect his bathing, hair care, or dressing. Tr. 132. Plaintiff's treating neurologist, R. K. Anderson, Jr., MD, noted on August 31, 2001, that Plaintiff was having difficulty with his legs feeling like they are very heavy and occasional burning and cold sensations in his esophageal/substernal area. Tr. 151. He also noted Plaintiff's report of feeling rather fatigued sometimes and opined that there was a little progression in Plaintiff's condition. *Id*. Dr. Anderson noted on October 11, 2001, that Plaintiff had retired from the military and was working in the evening part time, while helping with his young child at home. *Id*. Plaintiff reported that he was still quite tired and mornings were generally his best time. *Id*. Dr. Anderson noted Plaintiff's report of experiencing some unusual sensations, although he was no longer having the burning and cold sensations previously reported. Tr. 150. On February 27, 2001, Dr. Anderson noted that Plaintiff seemed to be getting slowly worse and reported some problems with swallowing and his memory, as well as some worsening of coordination, gait, and balance. *Id*. Dr. Anderson noted on March 14, 2002, that Plaintiff was getting a little weaker and tired easily, experienced a lot of fatigue, and was getting a hoarse voice. Tr. 149.

A progress note dated August 6, 2002, indicates Plaintiff's complaints of hoarseness and some dysphagia. Tr. 331. Plaintiff unable to walk more than 100 feet at a time because of his instability from MS. *Id*. Plaintiff's symptoms may fluctuate depending on the time of day and on different days. *Id*. A progress note dated October 1, 2002, indicates Plaintiff's report of increasing fatigue. Tr. 324.

Plaintiff reported to his family care provider on October 23, 2002, complaining of an increase in left extremity weakness and balance difficulties. Tr. 280. Plaintiff was referred to a

neurologist. *Id*. Plaintiff was examined by Aaron B. Koonce, M.D., a neurologist, on October 31, 2002. Tr. 274. Dr. Koonce noted Plaintiff's report of increasing gait and balancing difficulties, shortness of breath with even minimal activities, daily fatigue and insomnia, and increasing amounts of emotional agitation. Tr. *Id*. Dr. Koonce noted Plaintiff's pre-existing diagnosis of MS but indicated his opinion that it was clinically probable but uncertain if it is a relapsing-remitting type or a progressive type. Tr. 275. On December 18, 2002, Plaintiff's neurologist indicated that Plaintiff continued to have balance and gait problems, as well as increasing dysphagia and continuing fatigue. Tr. 270. A March 5, 2003, progress note indicates Plaintiff's report of becoming easily fatigued and short of breath after ambulating short distances, using a four-pronged cane. Tr. 261. Plaintiff reported increasing depression after a death in the family and cramps in the hands and feet on April 16, 2003. Tr. 257. Plaintiff's care provider noted on April 23, 2003, that Plaintiff reported some improvement with daytime fatigue. Tr. 254. He also reported continuing ataxia, weakness in the arms and legs, painful cramps at night, depressive symptoms, being overweight, and pruritis on the right foot. *Id*. Plaintiff was prescribed medications. Tr. 255. Plaintiff was using a four-pronged cane. *Id*. Dr. Koonce opined that Plaintiff's condition had deteriorated over the past year and changed his medication from Copaxone to Rebif. *Id*. A progress note dated July 11, 2003, noted that Plaintiff was tolerating the effects of Rebif, one of his medications, and that another medication had begun to alleviate his nocturnal leg crams. Tr. 246. Plaintiff reported having some stiffness and jerkiness of the legs during the day, which had caused him to fall. *Id.*

Plaintiff underwent a consultative examination on April 18, 2003. Tr. 308-10. The consultative examiner noted: Plaintiff used a quad cane but needed no assistive device when ambulating up to 50 feet. Tr. 309. He was walking with a mildly unsteady, mildly ataxic gait but did not lurch. *Id*. Grip strength and dexterity were preserved, and range of motion was within normal limits. Tr. 310. Plaintiff had moderate difficulty squatting but could squat at least 10 times

and gripped the examiner's fingers at least 10 times without apparent fatigue. *Id*. Motor, reflex, and sensory findings were otherwise within normal limits. *Id*.

A progress note dated March 23, 2004, for routine follow-up indicates that Plaintiff wanted to have a social security form filled out. Tr. 316. Plaintiff offerd no significant complaints. *Id*. Plaintiff reported overall weakness, especially in the legs. *Id*. Plaintiff's treating physician indicated her diagnosis of MS, established, gradually worsening; hyperlipidema, established, same; and depression, stable. Tr. 317.

Plaintiff alleges that: The record demonstrates that his physical ailment does wax and wane in its manifestation of disabling symptoms and the record demonstrates his continuing problems with fatigue, weakness, and ataxia. Plaintiff's depression has waxed and waned.

Clearly, the record demonstrates Plaintiff's complaints of fatigue, ataxia, and weakness in his legs. The record also includes a note indicating that Plaintiff feels best in the morning and feels worse when tired. Plaintiff also alleges that he has bad days. However, in the instant matter, the record does not contain evidence demonstrating that Plaintiff's impairment places him in a situation in which "by its nature, [his] physical ailment waxes and wanes in its manifestation of disabling symptoms." *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003). The claimant in *Singletary* was noted to be an individual who had "been hospitalized repeatedly over a long period of time for psychiatric problems," who had transient psychotic episodes, and who led a choatic life. *See Singletary*, 798 F.2d at 823. Plaintiff's mental and physical impairments have not similarly incapacitated him, with disabling symptoms waxing and waning in their effect. In his opinion the ALJ limited Plaintiff to sedentary work activity, limited to jobs that do not require: more than occasional stooping or crouching; balancing, crawling, kneeling, or climbing scaffolds, ladders, and ropes; working at unguarded heights or near unguarded hazardous mechanical equipment; sitting without the opportunity to occasionally stand in addition to a lunch and the normal legal breaks

during the work day; walking more than one hundred yards at one time without the opportunity to sit; standing more than ten minutes at one time without the opportunity to sit; standing/walking for more than one hour out of an 8-hour work day; pushing, pulling, or performing extended reaching repetitiously with the upper extremities more than occasionally; handling or fingering objects more than frequently; and speaking more than incidentally with co-workers and supervisors. Tr. 19-21. These limitations are consistent with Plaintiff's testimony, his reports of his daily activities, and evidence in the medical record. *See, e.g.,* Tr. 32, 35, 132, 149. While the record indicates Plaintiff's reports of gradually worsening physical symptoms as a result of his impairments, it does not demonstrate that Plaintiff experiences *disabling* symptoms which wax and wane. Moreover, the record indicates that Plaintiff's depression is stable. Tr. 317. Plaintiff argues that he has been noted to have problems with slurred speech and has also been noted to be dysarthric and dysphonic. Indeed, Plaintiff's complaints of problems with speaking and with his voice were symptoms which in part led to being diagnosed with MS. However, the ALJ incorporated a limitation on speech into his RFC assessment, which is consistent with Plaintiff's complaints and with notations in the medical record, indicating his problems with hoarseness with extended speech. "The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)(citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* The ALJ properly exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse*, 925 F.2d at 790.

In the recent case of *Perez v. Barnhart*, the Fifth Circuit clarified that "nothing in *Watson* suggests that the ALJ must make a specific finding regarding the claimant's ability to maintain employment in every case." *Perez v. Barnhart*, 415 F.3d. 457, 465 (5th Cir. 2005)(comparing *Frank* with *Watson*). Rather, a finding of ability to maintain employment is only required in a "situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." *Id*. The court noted that "without such a showing, the claimant's ability to maintain employment is subsumed in the RFC determination." *Id*. The issue of maintaining employment was not raised by the facts in this case.

The record demonstrates that the ALJ did not "pick and choose" only the evidence that supported his position. *See Loza*, 219 F.3d at 393 (internal citations omitted). Rather, the ALJ appropriately considered the record as a whole. *Id.* The ALJ noted and discussed Plaintiff's complaints of weakness and fatigue, and his opinion demonstrates that he considered such complaints in making his RFC assessment, which is supported by substantial evidence in the record.

## IV.   CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Plaintiff's complaint with prejudice.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1) and Rule 4 of Miscellaneous Order No. 6, For the Northern District of Texas, any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 11 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such

written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within 11 days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 1st day of September, 2006.

_____
**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**